**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| NOAH J. CRASE, | Case No. 1:16-cv-882 |
|     Plaintiff, | Barrett, J. |
| | Litkovitz, M.J. |
|     vs. | |
| | |
| COMMISSIONER OF | **REPORT AND** |
| SOCIAL SECURITY, | **RECOMMENDATION** |
|     Defendant. | |

Plaintiff Noah Crase brings this action pursuant to 42 U.S.C. § 405(g) for judicial review

of the final decision of the Commissioner of Social Security ("Commissioner") denying

plaintiff's application for disability insurance benefits ("DIB"). This matter is before the Court

on plaintiff's statement of errors (Doc. 11) and the Commissioner's memorandum in opposition

(Doc. 16).

**I. Procedural Background**

Plaintiff first filed an application for DIB in March 2007. (*See* Tr. 177). Administrative

law judge ("ALJ") Peter B. Silvain denied that application in a decision dated April 19, 2010.

(Tr. 174-97). On October 21, 2010, the Appeals Council denied plaintiff's request for review

and plaintiff did not appeal to this Court. (*See* Tr. 198-200).

Plaintiff filed the instant application for DIB in December 2011, alleging disability since

September 19, 2006 due to back, ankle, and heel bone problems, left leg problems, and back

problems. The application was denied initially and upon reconsideration. Plaintiff, through

counsel, requested and was granted a hearing before ALJ Elizabeth A. Motta. Plaintiff and a

vocational expert ("VE") appeared and testified at an ALJ hearing on March 5, 2013. On March

23, 2013, ALJ Motta issued a decision denying plaintiff's DIB application. The Appeals Council

granted plaintiff's request for review, vacated ALJ Motta's March 2013 decision, and remanded

the case for reconsideration of plaintiff's RFC and additional VE testimony. (*See* Tr. 249-52).

On remand from the Appeals Council, plaintiff, a VE, and a medical expert appeared and

testified at an ALJ hearing on February 5, 2015. On June 26, 2015, ALJ Motta issued a decision

denying plaintiff's DIB application. Plaintiff's request for review by the Appeals Council was

denied, making ALJ Motta's June 2015 decision the final administrative decision of the

Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable

physical or mental impairment that can be expected to result in death or that has lasted or can be

expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A).

The impairment must render the claimant unable to engage in the work previously performed or

in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §

423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation

process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

**B. The Administrative Law Judge's Findings**

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The [plaintiff] last met the Title II disability-insured-status requirements of the Social Security Act on December 31, 2010.

2. The [plaintiff] did not engage in substantial gainful activity during the period from April 20, 2010, the earliest date for a potential finding of "disability," and the Title II date last insured of December 31, 2010 (20 CFR 404.1571, *et seq.*).

3. Through the date last insured, the [plaintiff] had the following severe impairments: upper lumbar compression fracture with kyphosis deformity, history of sacral spine fracture, history of left calcaneous/ankle fracture, anxiety disorder, chronic pain disorder with memory loss (20 CFR 404.1520(c)).

4. Through the date last insured, the [plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. Through the date last insured, the [plaintiff] had the residual functional capacity [("RFC")] to perform a reduced range of sedentary work (as sedentary work is defined at 20 CFR 404.1567(a)). The [plaintiff] could lift as much as ten pounds occasionally and less than ten pounds frequently. He could stand and walk as much as two hours in an eight-hour workday. The [plaintiff] could sit up to six hours during an eight-hour workday. He should have been provided the opportunity to alternate between sitting and standing for five minutes every hour and not necessarily all at once during the hour. Postural activities (i.e., climbing ramps or stairs, balancing, stooping, kneeling, crouching, crawling) could be done no more than occasionally. The [plaintiff] could not climb ropes, ladders or scaffolding. He should have avoided concentrated exposure to extremes of heat, cold, wetness or humid conditions. The [plaintiff] should not have been exposed to vibration. He should not have been exposed to hazards such as moving or dangerous machinery or unprotected heights. He was limited to performing simple repetitive tasks involving low-stress duties (i.e., no fixed production quotas, no hazardous conditions and only occasional decision making and changes in work setting).

6. Through the date last insured, the [plaintiff] was unable to perform past relevant work (20 CFR 404.1565).[1]

7. The [plaintiff] was born [in] 1962. Through the date last insured, the [plaintiff] was 48 years old and he was classified as a "younger individual" for Social Security purposes (20 CFR 404.1563).

8. The [plaintiff] has a high-school education (20 CFR 404.1564).

9. The [plaintiff] does not have "transferable" work skills within the meaning of the Social Security Act (20 CFR 404.1568).

10. Considering the [plaintiff's] age, education, work experience and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the [plaintiff] could have performed through the date last insured (20 CFR 404.1569, 404.1569(a) and 404.1568(d)).[2]

11. The [plaintiff] was not "disabled," as defined in the Social Security Act, at any time from April 20, 2010, the earliest date for a potential finding of "disability," through December 31, 2010, the Title II date last insured (20 CFR 404.1520(g)).

(Tr. 19-35).

---

[1] Plaintiff's past relevant work was as a heating, ventilation, and air-conditioning mechanic, a medium, skilled position. (Tr. 33, 142).
[2] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of 600,000 sedentary occupations nationally, including representative positions such as document specialist, ticket checker, and charge account clerk. (Tr. 35, 144).

**C. Judicial Standard of Review**

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

On appeal, plaintiff first argues that in violation of the rule in *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997), ALJ Motta erred by not adopting RFC limitations

previously found in ALJ Silvain's April 2010 decision.  (Doc. 11 at 6-12).  Plaintiff also

contends ALJ Motta failed to properly weigh the opinion of the Ohio Bureau of Workers'

Compensation, which found that plaintiff is permanently and totally disabled.  (*Id.* at 12-14).

**1.  In accordance with Drummond, ALJ Motta erred by not adopting the more restrictive RFC limitations that ALJ Silvain found in the April 2010 decision.**

Plaintiff argues that the record does not contain new and material evidence to support

ALJ Motta's finding that plaintiff could occasionally stoop when the April 2010 RFC found that

plaintiff could not stoop at all.  (Doc. 11 at 10).  Plaintiff contends that the testimony during the

February 2015 hearing of a non-examining, non-treating medical expert "is insufficient to

override the binding prior ALJ determination from April 2010" because the expert did not

provide any testimony that showed improvement in plaintiff's condition to satisfy the rule of

*Drummond.*  (*Id.* at 10-11).  Plaintiff argues the ALJ also erred by not adopting the April 2010

RFC limitation that plaintiff must have the ability to alternate between sitting and standing at 15

minute intervals.  (*Id.* at 11-12).

The Commissioner responds that ALJ Motta's RFC finding is consistent with the Social

Security Administration's Acquiescence Ruling 98-4(6), which permits an ALJ to alter a

previous RFC finding when "there is new and material evidence relating to such a finding or

there has been a change in the law, regulations or rulings affecting the finding or the method for

arriving at the finding."  (Doc. 16 at 5) (quoting AR 98-4(6)).  The Commissioner argues that

pursuant to AR 98-4(6) and the procedural guidance contained in the Social Security

Administration's Hearings, Appeals and Litigation Law Manual ("HALLEX")[3] I-5-4-62, it was

reasonable for ALJ Motta to rely on the medical expert's testimony at the February 2015 hearing

---

[3] The HALLEX provides "procedural guidance to the staff and adjudicators of the [Social Security Administration's] Office of Hearings and Appeals" but is "not binding on this court."  *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 399 (6th Cir. 2008).

as new and material evidence justifying different RFC findings than those found by ALJ Silvain in the April 2010 decision. (*Id.* at 9-10).

In *Drummond*, the Sixth Circuit held that Social Security claimants and the Commissioner are barred from re-litigating issues that have previously been determined at the administrative level. 126 F.3d at 842. *See also* 42 U.S.C. § 405(h) ("The findings and decision of the Commissioner of Social Security after a hearing shall be binding on all individuals who were parties to such a hearing."). *Drummond* mandates that absent evidence a claimant's condition has improved, findings issued by an ALJ as part of a prior disability determination are binding on an ALJ in a subsequent proceeding. 126 F.3d at 841-42. The Commissioner bears the burden to prove changed circumstances so as to escape being bound by the principles of res judicata. *Id.* at 843.

Following the decision in *Drummond*, the Commissioner issued an Acquiescence Ruling mandating that ALJs in Ohio (and other states within the Sixth Circuit) follow *Drummond* by applying res judicata to a prior assessment of a claimant's RFC. The Acquiescence Ruling explains:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law. . . .

AR 98-4(6), 1998 WL 283902, at *3 (June 1, 1998).

This Court has found that it is "questionable whether AR 98-4(6) is fully consistent with *Drummond* since AR 98-4(6) does not use the phrase 'improvement in a claimant's condition' when instructing ALJs how to apply *Drummond*." *Harris v. Astrue*, No. 3:09-cv-260, 2010 WL 3909495, at *5 (S.D. Ohio May 21, 2010) (Report and Recommendation) (Ovington, M.J.),

*adopted,* 2010 WL 3909493 (S.D. Ohio Sept. 29, 2010) (Rice, J.). *See also Kennedy v. Astrue*,

247 F. App'x 761, 768 (6th Cir. 2007) ("Because this is a case which requires a showing of

changed circumstances (*i.e.*, medical improvement) in order to displace earlier findings, . . . a

comparison between circumstances existing at the time of the prior decision and circumstances

existing at the time of the review is necessary."); *Blevins v. Astrue*, No. 11-cv-74, 2012 WL

3149343, at \*6 (E.D. Ky. July 31, 2012) ("It is not enough that the ALJ relies on new evidence

that post-dates the earlier decision to arrive at his determination; the holding of *Drummond*

requires that such new evidence demonstrate 'an *improvement* in a claimant's condition.'"). This

Court has held that to allow an altered RFC finding without evidence of medical improvement

"would permit ALJs and the Commissioner to ignore *Drummond* and dispense with the doctrine

of administrative res judicata by, for example, relying on the testimony of a new medical expert,

who merely disagreed with the prior disability determination without considering any new

evidence." *Wilkerson v. Comm'r of Soc. Sec.*, No. 3:08-cv-419, 2010 WL 817307, at \*12 (Mar.

5, 2010).

The record shows that on April 19, 2010, ALJ Silvain found that plaintiff had the

following RFC:

> [T]o perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)
> with the following limitations: lifting up to 10 pounds occasionally; standing and
> walking 2 hours and sitting up to 6 hours in an eight hour work day, with normal
> breaks; ***the ability to alternate between sitting and standing positions at 15
> minute intervals throughout the day***; no climbing ladders, ropes or scaffolds;
> occasional climbing ramps or stairs and crouching; ***no stooping***, kneeling or
> crawling; avoid all exposure to hazardous machinery and unprotected heights; and
> work in a low stress job, defined as no fixed production quotas, no hazardous
> conditions and only occasional decision making and changes in the work setting.

(Tr. 184) (emphasis added).

At the February 2015 hearing, ALJ Motta called Dr. Richard Hutson to testify as a

medical expert. (Tr. 133). The ALJ instructed Dr. Hutson to focus on evidence of plaintiff's

condition through December 2010.  (Tr. 134).  Dr. Hutson summarized medical evidence that

consistently showed tenderness, spasms, and pain in the lower back and lumbar spine.  (*See* Tr.

136).  Based on his review of the medical records, Dr. Hutson opined:

> I don't believe that he would be capable of doing more than sedentary work by
> definition; lifting 10 pounds occasionally, less than 10 pounds frequently,
> standing or walking two hours in an eight-hour day, sitting six hours in an eight-
> hour day.  ***During the sitting portion of his work he would need to have a sit,
> stand option, he could not leave the workstation.  He'd be allowed to stand up,
> up to five minutes out of every hour.***  Five minutes would not have to be
> consecutive.  ***Postural limitations could all be done occasional*** but no ladders,
> ropes, or scaffolds.  Environmental limitations I would avoid concentrated
> exposure of extreme cold, extreme heat, wetness, humidity, and vibration and
> then say no heights, no hazards, no moving machinery.

(Tr. 136-37) (emphasis added).

ALJ Motta asked a VE to consider a hypothetical based on the limitations found by Dr.

Hutson.  (Tr. 143).  Based on those limitations, the VE opined that 600,000 jobs existed in the

national economy that the hypothetical individual could perform, including positions such as

document specialist, para mutual ticket checker, and charge account clerk.  (Tr. 143-44).  ALJ

Motta then asked the VE to change the hypothetical so that instead of being allowed to stand up

for five minutes out of every hour, the hypothetical individual must have the ability to alternate

between sitting and standing positions at 15-minute intervals throughout the day.  (Tr. 145).  The

VE believed that with such a restriction, there would not be a sufficient number of sedentary

positions available in the national economy.  (Tr. 146).

> In her June 2015 decision, ALJ Motta found that plaintiff had the following RFC:

> [T]o perform a reduced range of sedentary work (as sedentary work is defined at
> 20 CFR 404.1567(a)).  [Plaintiff] could lift as much as ten pounds occasionally
> and less than ten pounds frequently.  He could stand and walk as much as two
> hours in an eight-hour workday.  [Plaintiff] could sit up to six hours during an
> eight-hour workday.  ***He should have been provided the opportunity to alternate
> between sitting and standing for five minutes every hour and not necessarily all
> at once during the hour.  Postural activities*** (i.e., climbing ramps or stairs,
> balancing, ***stooping***, kneeling, crouching, crawling) ***could be done no more than***

*occasionally*. [Plaintiff] could not climb ropes, ladders or scaffolding. He should have avoided concentrated exposure to extremes of heat, cold, wetness or humid conditions. [Plaintiff] should not have been exposed to vibration. He should not have been exposed to hazards such as moving or dangerous machinery or unprotected heights. He was limited to performing simple repetitive tasks involving low-stress duties (i.e., no fixed production quotas, no hazardous conditions and only occasional decision making and changes in work setting).

(Tr. 24) (emphasis added). ALJ Motta recognized that the prior RFC from April 2010 included a requirement that plaintiff be able to alternate between sitting and standing at 15-minute intervals throughout the day and limited plaintiff to no stooping. (*Id.*).

ALJ Motta further addressed the prior RFC from April 2010 as follows:

For the most part, the residual functional capacity for sedentary exertion and the function-by-function limitations established in the prior (final and binding) decision of April 19, 2010, continue to be applicable and are adopted herein pursuant to the provisions of AR 98-4(6). There is no new and material evidence pertaining to [plaintiff's] physical condition that would further reduce his exertional capabilities below the "sedentary" level established in the decision of April 19, 2010.

(Tr. 25). However, ALJ Motta found that Dr. Hutson's testimony "constitutes new and material evidence that warrants adjustment of the residual functional capacity established in the prior decision of April 19, 2010, with respect to [plaintiff's] capacity to stoop." (Tr. 26). ALJ Motta stated that the RFC limitation concerning alternating between sitting and standing was also "adjusted accordingly based on the clarifying new and material evidence presented by Dr. Hutson." (*Id.*).

ALJ Motta found an additional RFC limitation that was not present in ALJ Silvain's April 2010 RFC determination. Specifically, ALJ Motta limited plaintiff to simple, repetitive tasks "to address the potential effect of memory loss and possible difficulty with maintaining focus and attention due to pain and/or anxiety." (Tr. 27). ALJ Motta indicated that in considering plaintiff's mental limitations, she considered "new and material" medical records that post-dated the earlier decision. (*See* Tr. 20-21).

10

Based on this record, ALJ Motta erred by not adopting the RFC conditions from the April 19, 2010 decision, which required plaintiff to have the ability to alternate between sitting and standing positions at 15 minute intervals throughout the day and limited plaintiff to no stooping. Under *Drummond*, ALJ Motta could only alter these limitations from the earlier RFC determination if there was new evidence that demonstrated "an improvement in [plaintiff's] condition." 126 F.3d at 842. Here, ALJ Motta cited to Dr. Hutson's testimony as new and material evidence satisfying the requirements of AR 98-4(6), but she did not discuss whether Dr. Hutson's testimony demonstrated an *improvement* in plaintiff's condition. (*See* Tr. 25-26).

Further, in reaching his opinion that plaintiff's RFC limitations were less restrictive than those found in the April 2010 decision, Dr. Hutson mostly considered the same pre-April 2010 evidence that was considered by ALJ Silvain in formulating the prior RFC. (*See* Tr. 136). The findings in the post-April 2010 evidence that Dr. Hutson cited as relevant to his opinion were consistent with the findings in the pre-April 2010 evidence. (*See id.*). Dr. Hutson did not indicate that there was an improvement in plaintiff's condition after April 19, 2010 that justified Dr. Hutson's opinion that plaintiff's RFC was less restricted than that found by ALJ Silvain in April 2010. (*See id.* at 134-41).

Likewise, ALJ Motta did not cite to any evidence indicating that there was an improvement in plaintiff's condition, but merely relied on the "clarifying" testimony of Dr. Hutson in formulating a less restrictive RFC. (*See* Tr. 26). This stands in contrast to ALJ Motta's assessment of plaintiff's mental RFC where ALJ Motta relied on new medical evidence of deterioration post-dating the April 2010 decision to justify an additional limitation to simple, repetitive tasks. (*See* Tr. 20-21, 27). While the "clarifying" testimony of Dr. Hutson may constitute "new" evidence to satisfy AR 98-4(6), it does not satisfy *Drummond*'s requirement that the Commissioner show improvement in plaintiff's medical condition before formulating a

less restrictive RFC.  *See Drummond*, 126 F.3d at 841-43.  ALJ Motta's decision does not provide any "comparison between circumstances existing at the time of the prior decision and circumstances existing at the time of the review" beyond mentioning the "clarifying" testimony of Dr. Hutson.  *Kennedy*, 247 F. App'x at 768.  In relying on Dr. Hutson's testimony in the absence of any new evidence of improvement in plaintiff's condition to support Dr. Hutson's opinion, ALJ Motta "ignore[d] *Drummond* and dispense[d] with the doctrine of administrative res judicata by . . . relying on the testimony of a new medical expert who merely disagreed with the prior [RFC] determination."  *Wilkerson*, 2010 WL 817307, at *12.  This was error.

Accordingly, because the Commissioner has failed to bear the burden of proving medical improvement so as to escape being bound by the principles of res judicata, plaintiff's assignment of error should be sustained and this case should be reversed.  *See Drummond*, 126 F.3d at 843. In a case where the final decision of the Commissioner is not supported by substantial evidence, the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing."  42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100 (1991).  Generally, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits."  *Faucher v. Sec. of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Sec. of H.H.S.*, 820 F.2d 777, 782 (6th Cir. 1987).  When the Commissioner fails to bear the burden of providing evidence of medical improvement to avoid administrative res judicata, the Sixth Circuit has held that remand for an immediate award of benefits may be appropriate.  *See Kennedy*, 247 F. App'x at 768-69.

Here, all factual issues have been resolved and the record adequately establishes plaintiff's entitlement to benefits.  Specifically, when the more restrictive RFC finding requiring plaintiff to have the ability to alternate between sitting and standing at 15-minute intervals was

12

included in the hypothetical to the VE, the VE found that there were not sufficient jobs in the national economy that plaintiff could perform. (Tr. 145-46). Thus, pursuant to *Drummond* and the VE's testimony, this case should be remanded for an immediate award of benefits based on a finding that plaintiff was disabled as of April 20, 2010.

**2. The Court need not reach plaintiff's assignment of error concerning the ALJ's assessment of the opinion of the Ohio Bureau of Workers' Compensation that plaintiff is permanently and totally disabled.**

It is not necessary to address plaintiff's remaining assignment of error. Even if this assignment of error has merit, it would at most result in an award of benefits to which plaintiff is already entitled based on the *Drummond* error described above.

**IT IS THEREFORE RECOMMENDED THAT**:

The decision of the Commissioner be **REVERSED** and this case be **REMANDED** for an award of benefits pursuant to Sentence Four of 42 U.S.C. § 405(g).


Date: ____5/25/2017_____          ___s/ Karen L. Litkovitz_____
                                             Karen L. Litkovitz
                                             United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

NOAH J. CRASE,                                      Case No. 1:16-cv-882
      Plaintiff,                             Barrett, J.
                                                   Litkovitz, M.J.

      vs.

COMMISSIONER OF
SOCIAL SECURITY,
      Defendant.


**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).